**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------

**LENORA VINSON,**

                    **Plaintiff,**          **04 Civ. 7769 (JGK)**

      **- against -**                        **OPINION AND ORDER**

**THE CITY OF NEW YORK and**
**THE NEW YORK CITY HUMAN**
**RESOURCES ADMINISTRATION,**

                    **Defendants.**
----------------------------------------

**JOHN G. KOELTL, District Judge:**

The pro se plaintiff Lenora Vinson brings this employment discrimination action against her former employer, the New York City Human Resources Administration ("HRA"), and the City of New York (collectively, "the City"). The plaintiff alleges that the City discriminated against her on the basis of her national origin as an African American in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as well as 42 U.S.C. §§ 1981, 1983, and 1985(3). Construed liberally, the plaintiff's complaint also asserts a claim for discrimination based on a hostile work environment. The defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the defendants' motion for summary judgment is granted.

1

I.

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion.  See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff

liberally and interpret them 'to raise the strongest arguments that they suggest'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994))). In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. Local Civil Rule 56.2; see McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999).

In this case, by Notice to Pro Se Litigant Opposing Motion for Summary Judgment dated July 28, 2006, the plaintiff was advised of the procedures for responding to a motion for summary judgment, including the requirement that the plaintiff submit a response to the defendants' statement pursuant to this District's Local Rule 56.1 and to submit counter-evidence. The plaintiff was also provided with a copy of Rule 56.

The plaintiff's submissions are nonetheless deficient. Any allegedly undisputed fact not "specifically controverted" by the opposing party's Rule 56.1 statement "will be deemed to be admitted." Local Rule 56.1(c); see also Dunkin' Donuts Inc. v. Barr Donut, LLC, 242 F. Supp. 2d 296, 298-99 (S.D.N.Y. 2003). Even undisputed facts, however, must be supported by the evidence presented. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

In response to the Defendants' Local Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1 Stmt."), the plaintiff merely

4

submitted an "Answer," see Answer Opposing Motion to Defendants [sic] for Summary Judgment ("Pl.'s Stmt."), that "ignores a number of defendants' record-based factual assertions and contains conclusory factual allegations with no citations to the record." Sterbenz v. Attina, 205 F. Supp. 2d 65, 68 (E.D.N.Y. 2002). "Where plaintiff has not responded to defendants' factual assertions—all of which are established by documentary evidence and/or the deposition testimony of plaintiff and her counsel—this Court has deemed those facts uncontroverted." Id.

Therefore, for the purposes of this motion, the defendants' allegedly undisputed facts that are supported by the record and which the plaintiff has not specifically controverted with admissible evidence in accordance with Rule 56 and Local Rule 56.1 will be deemed admitted.

**II.**

Given the discussion above, the following facts are undisputed. The plaintiff was hired by the HRA in July 2003 as a Fraud Investigator. (Defs.' 56.1 Stmt. ¶¶ 7, 11 and Ex. F.) To qualify for the position of Fraud Investigator, an individual must possess a baccalaureate degree from an accredited college, a high school diploma and three years of specific investigative experience, or an associate degree or 60 semester credits from an accredited college including or supplemented by 12 semester

5

credits in a criminal justice major and one year of specific investigative experience. (Defs.' 56.1 Stmt. ¶ 5 and Ex. G.) The plaintiff obtained the position based in part on her representation on her pre-employment application that she expected to receive a Bachelor of Arts degree from Medgar Evers College in 2003. (Defs.' 56.1 Stmt. ¶¶ 6-7 and Ex. D.) Without a degree, the plaintiff was otherwise ineligible for the position because she did not have any relevant prior investigative experience. (Defs.' 56.1 Stmt. ¶ 9 and Ex. D.)

    Within two months the plaintiff came into conflict with her co-workers, including her supervisor Desreen Burnett, who was born in Jamaica, but who self-identifies as an African American, and her co-worker Deann Rashford who was also born in Jamaica. (See Defs.' 56.1 Stmt. ¶¶ 13-15 and Ex. H, J, Y.) On September 10, 2003, Rashford informed Burnett that the plaintiff physically threatened her, exclaiming that she would "take [them] all down" and that "we can take this outside and handle this business." (Defs.' 56.1 Stmt. ¶¶ 16-17 and Ex. H, J, K.) As a result of this incident, on September 30, 2003, the plaintiff and Rashford were sent separate memoranda that stated that their behavior was inappropriate and unacceptable under the Code of Conduct, cited in the memoranda, which according to the memoranda states that "[e]mployees shall be courteous and

6

considerate in their contact with fellow employees at all times." (Defs.' 56.1 Stmt. ¶ 17 and Ex. J, K.)

The plaintiff received another warning, on September 30, 2003, after she left her work post without permission. (Defs.' 56.1 Stmt. ¶ 19 and Ex. L.) Burnett warned the plaintiff that her behavior was unacceptable under the Code of Conduct, cited in the warning, which as quoted in the warning provides that "[e]mployees shall not be absent from or leave assigned work location without appropriate authorization." (Defs.' 56.1 Stmt. ¶¶ 20–21 and Ex. L.)

Around this time the plaintiff sent a letter to Burnett informing her that she felt harassed by her co-workers. (Defs.' 56.1 Stmt. ¶ 22 and Ex. M.) In the letter, the plaintiff did not contend that the alleged harassment was related to her national origin, but instead urged that the alleged harassment was a result of a personal vendetta. (Defs.' 56.1 Stmt. ¶ 23 and Ex. M.)

On October 22, 2003, the plaintiff received a performance evaluation marked "unratable" because of her short tenure; she refused to sign the evaluation and consequently received a memorandum documenting the conduct that Burnett viewed as insubordinate. (Defs.' 56.1 Stmt. ¶¶ 24–27 and Ex. N, P, R.) Also in October, the plaintiff requested and was granted a transfer, although the person responsible for handling the

7

request had no knowledge that the plaintiff was making the request because of harassment based on national origin. (Defs.' 56.1 Stmt. ¶ 33 and Ex. C.) During this time, Jose Velez, a Fraud Investigator and former mediator, was assigned to mediate the conflict between the plaintiff and her supervisor. (Defs.' 56.1 Stmt. ¶ 34 and Ex. B.) Mr. Velez testified that the plaintiff complained that co-workers were "picking on her," but he did not testify that this was attributed to discrimination based on national origin. (Id.) In addition, around this time, the plaintiff received another written warning after she told Fraud Investigator Miller Rueda that "I'm not a starter, but a finisher" and threatened to assault him. (Defs.' 56.1 Stmt. ¶¶ 28-32 and Ex. O, Q.)

Prior to this time, on or about September 3, 2003, the HRA's Internal Operation Division ("IOD") commenced a routine background investigation of the plaintiff that resulted in written confirmation from Medgar Evers College that the plaintiff did not possess a bachelor's degree. (Defs.' 56.1 Stmt. ¶ 37 and Ex. T, V.) HRA requires a background investigation for all new employees, and it is standard operating procedure for the investigation to continue and be completed after the individual is hired by the City and is working at HRA. (Decl. of Avis Dennis-Cox, dated July 27, 2006, attached as Defs.' 56.1 Stmt. Ex. V ("Dennis-Cox Decl."), at

8

¶ 2.) The plaintiff, during an interview with the IOD, admitted that she did not possess a bachelor's degree. (Defs.' 56.1 Stmt. ¶ 38 and Ex. T. V.) As a result of the plaintiff's failure to satisfy the minimum educational requirements for her position, the IOD recommended immediate termination. (Defs.' 56.1 Stmt. Ex. T.) Consistent with this recommendation, the plaintiff was dismissed on November 7, 2003. (Defs.' 56.1 Stmt. ¶¶ 39-40 and Ex. U, V.)

On January 30, 2004, the plaintiff filed a discrimination charge with the State Division of Human Rights in which she alleged that her performance was satisfactory and she was treated differently from co-workers for similar conduct. (Defs.' 56.1 Stmt. ¶ 41 and Ex. W.) The plaintiff alleged that she was the victim of discrimination based on national origin as an African American. (Id.)

On April 15, 2004, the City responded to the complaint, denying the plaintiff's allegations. (Defs.' 56.1 Stmt. ¶ 43 and Ex. X.) The City denied that the plaintiff's performance was satisfactory, explaining that her performance was "unratable." (Id.) The City also stated that the plaintiff was discharged because she failed to satisfy the minimal educational requirements for the position. (Id.) Finally, the City denied that the plaintiff was treated differently from her co-workers as a result of the incidents described above. (Id.)

9

The plaintiff, after receiving a Right to Sue letter from the Equal Employment Opportunity Commission dated August 10, 2004 (Defs.' 56.1 Stmt. ¶ 45 and Ex. Z), commenced this law suit on August 30, 2004.

### III.

The defendants move for summary judgment on two grounds. First, the defendants argue that the plaintiff has failed to establish a prima facie case of national origin discrimination. Second, the defendants contend that the plaintiff has failed to establish a hostile work environment claim.[1]

### A.

To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for her position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also St. Mary's Honor Ctr.

---

[1] Apart from the plaintiff's claims under Title VII, the plaintiff's complaint contains references to 42 U.S.C. §§ 1981, 1983, and 1985. These claims will be analyzed together with the Title VII claims, applying the Title VII framework. See Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 146 (2d Cir. 1999).

v. Hicks, 509 U.S. 502, 506 (1993); James v. New York Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000); Singh v. New York City Off-Track Betting Corp., No. 03 Civ. 5238, 2005 WL 1354038, at *6 (S.D.N.Y. June 8, 2005). If the plaintiff meets her minimal burden of establishing a prima facie case, the burden of production then shifts to the defendants to offer a legitimate, nondiscriminatory rationale for the adverse employment action. See McDonnell Douglas, 411 U.S. at 802–03; St. Mary's Honor Ctr., 609 U.S. at 506-07; James, 233 F.3d at 154.

After the defendants articulate a legitimate reason for the action, the presumption of discrimination raised by the prima facie case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254–56 (1981); Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001); Darrell v. Consol. Edison Co. of New York, Inc., No. 01 Civ. 8130, 2004 WL 1117889, at *8 (S.D.N.Y. May 18, 2004). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253; see also Reeves v. Sanderson Plumbing Co., 530 U.S. 133, 143 (2000); Darrell, 2004 WL 1117889, at *8.

11

The Court of Appeals for the Second Circuit has instructed that in determining whether the plaintiff has met this burden, a court is to use a "case by case" approach that evaluates "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." James, 233 F.3d at 156 (quoting Reeves, 530 U.S. at 148-49); see also Darrell, 2004 WL 1117889, at *8.  Although summary judgment must be granted with caution in employment discrimination actions "where intent is genuinely in issue, summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers, 43 F.3d at 40 (citation omitted); see also Singh, 2005 WL 1354038, at *7.

The defendants argue that the plaintiff has failed to show that she was qualified for her position as a Fraud Investigator because she lacked the requisite minimal educational and investigative experience.  In addition, the defendants contend that the plaintiff has failed to set forth specific factual allegations that she was terminated under circumstances giving rise to an inference of national origin discrimination.  Therefore, the defendants argue that the plaintiff has failed to establish her prima facie case of employment discrimination.

12

First, the plaintiff has failed to establish that she was qualified for her position as a Fraud Investigator.  The Court of Appeals for the Second Circuit has noted that "the inference of minimal qualifications" is not difficult to draw, Gregory v. Daly, 243 F.3d 687, 695-96 (2d Cir. 2001), and requires that the plaintiff show only that she "possesses the basic skills necessary for performance of [the] job," Owens v. New York City Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991) (alteration in original).  See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001).  The Court of Appeals has warned that district courts should not interpret the qualification prong so "as to shift onto the plaintiff an obligation to anticipate and disprove, in [her] prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision."  Slattery, 248 F.3d at 92.  Consequently, "the qualification necessary to shift the burden to [the] defendant for an explanation of the adverse job action is minimal."  Id.

Nonetheless, "[a]lthough the plaintiff's burden is minimal, [her] qualifications must still be assessed by reference to 'the criteria the employer has specified for the position.'"  Shannon v. Nicholson, No. 05 Civ. 3604, 2006 WL 839071, at *4 (S.D.N.Y. Mar. 31, 2006) (quoting Thornley v. Penton Publ'g, 104 F.3d 26, 29 (2d Cir. 1997)).  Although the inference of minimal qualification is not difficult to draw where the employer has

13

already hired the employee, see Slattery, 248 F.3d at 92, "this does not mean that nothing beyond that fact of hiring need be shown; otherwise, this requirement would be completely superfluous in all discharge cases." Shannon, 2006 WL 839071, at *4 n.5. For example, "an inference of minimal qualification is less readily available in cases... where the employee is hired on a probationary basis." Id.

In a case with very similar facts, Magistrate Judge Ellis found that a plaintiff who lacked the necessary investigative and educational experience was not qualified for the position of fraud investigator in the New York City Human Resources Administration and therefore could not establish a prima facie case of employment discrimination.[2]  See Ogodor v. City of New York, No. 98 Civ. 5353, 2001 WL 210192, at *8 (S.D.N.Y. Feb. 26, 2001).

With respect to education and experience requirements, in order to qualify as a Fraud Investigator, the plaintiff "[b]y the last day of the Application Period" must have had:

> (1) A four-year high school diploma or its educational equivalent and three years of satisfactory, full-time experience, acquired within the United States in one or a combination of the following: performing investigations involving criminal and/or fraudulent activities; evaluating credit histories; searching for assets; and/or researching, compiling and/or locating

---

[2] The necessary qualifications for the fraud investigator position in Ogodor were slightly different from the qualifications for the position in this case.

> evidence or information in order to build a case or uncover activities of a criminal, corrupt, unlawful or unethical nature involving public or private funds; or
>
> (2) An associate degree or 60 semester credits from an accredited college, including or supplemented by 12 semester credits from an accredited United States college in criminal justice, forensic science, police science, criminology, criminal justice administration and planning, and/or law or related field and one year of satisfactory, full-time experience as an investigator as described in "1" above; or
>
> (3) A baccalaureate degree from an accredited college; or
>
> (4) Education and/or experience equivalent to "1", "2" or "3" above. However, all candidates must have at least a four-year high school diploma or its equivalent.

(Defs.' 56.1 Stmt. Ex. G.)

In her interview with the IOD, the plaintiff admitted that she did not possess a valid bachelor's degree from any college and that she was not going to be awarded one any time soon. (Defs.' 56.1 Stmt. Ex. T, V.)  In addition, based on the representations in her pre-employment application, the plaintiff did not have any prior experience as a fraud investigator.  (See Defs.' 56.1 Stmt. ¶ 9 and Ex. D.)

Although in her "Answer" to the defendants' Rule 56.1 statement, the plaintiff now attempts to "deny" the defendants' allegation that she did not possess a bachelor's degree, her denial simply ignores the defendants' assertion, and she fails to provide any evidence to the contrary.  The plaintiff merely

15

attaches an enrollment verification letter from Medgar Evers College, dated October 28, 2002, indicating that she had achieved "Upper Senior" status, that her expected graduation date was January 2001, but nowhere indicating that she had obtained a bachelor's degree. (Pl.'s Stmt. Ex. 5.) In addition, although the plaintiff stated during her deposition that she did not "recall anything" regarding her education, including whether or not she possessed a bachelor's degree (see Defs.' 56.1 Stmt. Ex. A), the defendants have submitted sufficient evidence indicating that she did not possess any such degree (see, e.g., Dennis-Cox Decl. at ¶¶ 6-8).

The plaintiff has thus failed to produce any evidence that she in fact possessed the minimal requirements for the position of Fraud Investigator. This Court gives considerable deference to an employer's determination of what qualifications are essential to perform a certain job. See Ogodor, 2001 WL 210192, at *8; see also D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir. 1998) ("A court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position."). Therefore, the plaintiff has failed to raise a triable issue of fact as to whether she was qualified for the position of Fraud Investigator. Accordingly, the plaintiff has failed to satisfy the second element of her prima facie case.

Moreover, the plaintiff has failed to adduce any evidence that the discharge occurred under circumstances that give rise to an inference of discrimination.  The evidence shows that the plaintiff's termination resulted from a routine post-employment check of her qualifications made by the IOD.  The plaintiff, therefore, also has not satisfied the fourth element of her prima facie case.  For these reasons, the plaintiff has not established a prima facie case of employment discrimination based on national origin.

Moreover, even if the plaintiff had presented sufficient evidence to establish a prima facie case, the defendants have offered a legitimate, non-discriminatory basis for her termination based on her failure to possess a college degree or otherwise satisfy the minimal qualifications for a Fraud Investigator.  The plaintiff has produced nothing, apart from speculation and conjecture, to show that the defendants' proffered bases for termination were pretextual.  See, e.g., Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999) ("[Courts] must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.").  Given the evidence in the record, and viewing the facts in the light most favorable to the plaintiff, there is no evidence of pretext in this case.

17

For these reasons, the plaintiff has not established any claim for employment discrimination based on national origin.

**B.**

To the extent that the plaintiff's complaint can be construed as pleading a claim for discrimination based on a hostile work environment, that claim also fails.

A hostile work environment can constitute an adverse employment action for the purposes of establishing a prima facie case of employment discrimination under Title VII.  See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-16 (2002).  To establish a prima facie case of hostile work environment, a plaintiff must show:  (1) discriminatory harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) a specific basis exists for imputing the objectionable conduct to the employer.  Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997); see also Singh, 2005 WL 1354038, at *11.  The plaintiff must show not only that she subjectively perceived the environment to be abusive but also that the environment was objectively hostile.  See Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004).

18

The first element of the prima facie case must be established by a showing that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [the plaintiff's] employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). Isolated incidents typically will not create a hostile work environment, unless the incidents are so severe that they alter the terms and conditions of employment. Demoret, 451 F.3d at 149; Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004). "Generally, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Demoret, 451 F.3d at 149 (quoting Alfano, 294 F.3d at 374).

In analyzing a hostile work environment claim, courts consider the totality of the circumstances, taking into account "a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,'" Demoret, 451 F.3d at 149 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Finally, although the Court of Appeals for the Second Circuit has cautioned that hostile work environment claims are "especially well-suited for jury determination," Schiano v. Quality Payroll Systems, Inc.,

19

445 F.3d 597, 605 (2d Cir. 2006), "[i]t is axiomatic that mistreatment at work... is actionable under Title VII only when it occurs because of an employee's... protected characteristic," Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

The plaintiff has failed to adduce any evidence from which a rational trier of fact could conclude that she was subject to a hostile work environment. The plaintiff does not point to any conduct that could reasonably be construed as severe and pervasive. Moreover, the plaintiff does not present any evidence that the few incidents of which the plaintiff complains occurred because of her national origin. Accordingly, the plaintiff's claim of hostile work environment fails.

## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment dismissing this action is **granted**. The Clerk of the Court is directed to enter judgment dismissing the complaint and closing this case.

SO ORDERED.

Dated:   New York, New York
         March 28, 2007

John G. Koeltl
United States District Judge